**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GOLDA D. HARRIS**, <br><br> Plaintiff, <br><br> v. <br><br> **CREDIT ACCEPTANCE CORPORATION,** *et al.*, <br><br> Defendants. | Civil Action No. 21-12986 (ZNQ) (DEA) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss and Compel Arbitration filed by Defendant Credit Acceptance Corporation ("Credit Acceptance") and Defendant Brett Roberts ("Roberts") (collectively, "Defendants"). ("Motion," ECF No. 9.) Defendants filed a Brief in Support of the Motion. ("Moving Br.," ECF No. 9-10.) Plaintiff Golda D. Harris ("Plaintiff"), appearing *pro se*, opposed the Motion, ("Opp'n Br.," ECF No. 10), to which Defendants replied, ("Reply," ECF No. 12). The Court has carefully considered the parties' submissions and decided the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will grant Defendants' motion to compel arbitration and dismiss the Complaint.[1]

---

[1] Plaintiff filed a Motion to Remand (ECF No. 4). For the reasons discussed herein, the Motion to Remand will be denied.

1

I.        **BACKGROUND AND PROCEDURAL HISTORY**

This action arises out of a dispute over the purchase and financing of a used 2012 Hyundai Veracruz (the "Vehicle"). (*See generally* Valle Decl., Ex. B, Compl., ECF No. 9-3; *see also* Compl., ECF No. 1-2.) On December 8, 2020, Plaintiff and Plummer Harris, a non-party and co-signer, purchased the Vehicle from Best Cars R Us, LLC ("Dealer"), and entered into a Retail Installment Contract ("Contract") with the Dealer. (Valle Decl., Ex. C, "Retail Installment Contract," ECF No. 9-4; "Retail Installment Contract," ECF No. 1-2 at 18–22.) As part of the sale, Plaintiff and Harris also signed a Declaration Acknowledging the Electronic Signature Process (the "E-Signature Declaration"), confirming they reviewed the Contract and signed it. (Valle Decl., Ex. D, "Declaration Acknowledging Electronic Signature Process," ECF No. 9-5.) By signing the E-Signature Declaration, Plaintiff acknowledged that she: (1) read, understood, and agreed to use an electronic signature to sign all documents necessary to process the retail installment transaction, including the Contract; (2) had the opportunity to review a paper version of the Contract prior to signing it; (3) had "physical control of the key board, mouse or other device" when she signed the Contract; and (4) received a fully executed copy of the Contract. (*Id.*)

The Contract, which consists of only five pages, includes a detailed agreement to arbitrate ("Arbitration Clause"). (Contract at 6.) It also contains two notices concerning the existence of the Arbitration Clause. (*Id.* at 2, 6.) The first page of the Contract states:

> ARBITRATION: This Contract Contains an Arbitration Clause that states You and We may elect to resolve any dispute by arbitration and not by court action. See the Arbitration Clause on Page 5 of this contact for the full terms and conditions of the agreement to arbitrate. By initialing below, you confirm that you have read, understood and agreed to the terms and conditions in the Arbitration Clause.
>
> ADDITIONAL TERMS AND CONDITIONS: THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE

> AGREEMENT TO ARBITRATE SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT, ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

(*Id.* at 2.)  Its last page is captioned "Agreement to Arbitrate," and it provides the following:

> This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" means Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing[,] and collection of amounts due under the Contract . . . .

(*Id.* at 6.)  The Arbitration Clause defines "Dispute" as:

> [A]ny controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.

(*Id.*)  In addition, the Arbitration Clause also informs the parties of their right to reject the Arbitration Clause, detailing when and where to send the notice of rejection.  (*Id.*)  It states, "[a] rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract."  (*Id.*)

Neither Credit Acceptance nor Roberts, the former Chief Executive Officer of Credit Acceptance, participated in the Dealer's sale of the Vehicle.  However, after the Dealer's sale of the Vehicle to Plaintiff, Credit Acceptance accepted assignment of the Contract from Dealer.  ("Credit Acceptance Corporation Disclosure Form," ECF No. 1-2 at 54.)

On December 23, 2020, Plaintiff commenced arbitration by filing a Demand for Arbitration Form ("Demand") with JAMS. (Valle Decl., Ex. E, "Demand for Arbitration Form," ECF No. 9-6.) The next day, Plaintiff prepared a letter rejecting the Arbitration Clause, and she mailed it to Roberts on January 2, 2021. (Valle Decl., Ex. F, "Rejection Letter," ECF No. 9-7; "Rejection Letter," ECF No. 1-2 at 26.) Plaintiff did not mail the rejection letter to the address specified in the Arbitration Clause. (*See Id.*; Contract at 6.) According to Defendants, they "appeared in the arbitration, agreed to the forum, and paid JAMS the required fees." (Moving Br. at 6.) Thereafter, Defendants filed an Answer denying the material allegations in Plaintiff's Demand and asserted various defenses against her claims in the arbitration proceeding. (Valle Decl., Ex. G, "Answer and Defense of Respondents," ECF No. 9-8.)

On April 4, 2021, Plaintiff filed a motion to dismiss the arbitration, arguing that her claims were not arbitrable and that she rejected the Arbitration Clause. (Valle Decl., Ex. H, "Decision and Order by Arbitrator," ECF No. 9-9.) Defendants opposed her motion and moved to dismiss all claims against Roberts. (*Id.* at 2.) On May 5, 2021, the Arbitrator denied both motions without prejudice and directed Plaintiff to commence a judicial action seeking a declaratory judgment concerning the enforceability of the Arbitration Clause. (*Id.* at 9–10.) The Arbitrator stayed the arbitration proceeding pending the outcome of the court proceeding. (*Id.* at 10.)

On or about June 10, 2021, Plaintiff filed an action in the Superior Court of New Jersey, Somerset County, Law Division ("State Court Action"), seeking damages for the claims she pursued in the arbitration proceeding. (*See* Compl.) The Complaint alleges that Defendants violated the federal Racketeer Influenced and Corrupt Organization Act ("RICO"), Equal Credit Opportunity Act ("ECOA"), the Truth in Lending Act ("TILA"), the New Jersey Consumer Fraud

4

Act, New Jersey Uniform Commercial Code, and state lemon laws by making misrepresentations in connection with the financing of a motor vehicle. (*Id.* ¶¶ 3, 8, 10, 28.)

In the Complaint, Plaintiff alleges that on or around December 8, 2020, Defendants "electronically signed [Plaintiff's and Harris'] names into an illegal loan contract (hereinafter loan), which contained a fraudulent arbitration agreement . . . ." (*Id.* ¶ 1.) "Plaintiff was informed that [her] name had been electronically filled in and that signing the loan, arbitration, and warranty contracts were a formality for the record because [Defendants'] contract [was] electronically signed." (*Id.*) She further alleges that Defendants "presented an arbitration agreement, a separate part of the contract, for Plaintiff[] to electronically and physically sign . . . ." (*Id.* ¶ 2.) She contends the electronic signatures deprived her of the opportunity to read the Contract, including the Arbitration Clause. (*Id.* at 1.) In sum, Plaintiff alleges that Defendants "fraudulently sold plaintiff an arbitration agreement (as part of a loan contract)," and she claims that the Arbitration Clause as an "invalid and fraudulent arbitration agreement." (*Id.* ¶¶ 10, 28.)

On June 25, 2021, Defendants removed the State Court Action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1441. ("Notice of Removal," ECF No. 1.) Plaintiff filed a motion to remand on July 1, 2021, and Defendants opposed on July 15, 2021. (ECF Nos. 4, 8.) Defendants now move to dismiss this action and compel arbitration consistent with the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and the parties' contractual agreement.

## II.     PARTIES' ARGUMENTS

### A. Defendants' Position

For several reasons, Defendants ask the Court to enforce the Arbitration Clause in the Contract and dismiss this action. (Moving Br. 9.) First, they argue that "the Contract contain[ed]

5

two conspicuous notices advising Plaintiff of the Arbitration Clause[] just above her initials" on the first page. (*Id.*) In addition, Plaintiff also initialed page five of the Contract, which contains the Arbitration Clause. (*Id.*) Defendants note that Plaintiff also signed the Declaration in wet ink, which acknowledged that she read and electronically signed the Contract. (*Id.* at 10.) They assert the Arbitration Clause identifies the parties bound by the Contract, the types of disputes subject to arbitration, the process for initiating arbitration, and the process for rejecting arbitration. (*Id.* at 9.) In addition, Defendants argue that Plaintiff admitted she signed or otherwise agreed to the terms of the Contract in both her Arbitration Demand and her Complaint. (*Id.* at 10.) Defendants contend Plaintiff admits to voluntarily entering into the Contract and to awareness of the Arbitration Clause. (*Id.*) Defendants, therefore, argue that Plaintiff is bound by the Arbitration Clause and cannot now credibly argue that she either did not know what she signed or did not take the time to read it. (*Id.* at 11.)

Second, Defendants argue that Plaintiff's claims against them fall squarely within the definition of a "Dispute" in the Arbitration Clause. (*Id.*) "Dispute" means "any controversy or claim" arising "out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, [and] advertising for the Vehicle or its financing . . . ." (*Id.* at 13.) The Arbitration Clause states that the term "Dispute" should have the "broadest meaning possible" and should include contract claims and "claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." (*Id.* at 14.) Defendants, therefore, argue that all of Plaintiff's claims are subject to arbitration because they arise out of her contractual relationship with Credit Acceptance and are alleged violations of laws and state statutes. (*Id.* 14–15.)

Third, Defendants argue that the Federal Arbitration Act ("FAA") compels arbitration of this dispute. (*Id.* at 15.) They contend that the transaction in this case meets the FAA's interstate commerce requirement because: (1) Plaintiff resided in New Jersey when she purchased the Vehicle from the Dealer and executed the Contract; and (2) Credit Acceptance, a Michigan corporation with a principal place of business in Michigan, later accepted assignment of the Contract. (*Id.* at 16–17.) Also, the Arbitration Clause states that "[t]his Contract evidences a transaction involving interstate commerce" and that "this Arbitration Clause is governed by the FAA, and not by any state arbitration law." (*Id.* at 17–18.) Defendants argue that the Court should grant their motion to dismiss and compel arbitration because the FAA requirements are satisfied here: the Arbitration Clause exists, it is enforceable, and the dispute falls within its scope. (*Id.* at 19.)

Last, Defendants respond to Plaintiff's claim that she rejected arbitration in a letter dated December 24, 2020, which she addressed to Roberts and mailed on January 2, 2021. (*Id.* at 19–20.) Defendants contend the rejection was invalid because Plaintiff failed to send the rejection letter to the address specified in the Arbitration Clause. (*Id.* at 19.) In addition, Defendants note that Plaintiff failed to have the "co-buyer join in and sign [the] arbitration rejection notice," a requirement specified in the Arbitration Clause. (*Id.* at 19–20.) Most importantly, they highlight that Plaintiff attempted to reject the Arbitration Clause *after* she had already filed her Arbitration Demand on December 23, 2020. (*Id.* at 20.) Defendants argue that "Plaintiff waived the right to pursue her claims in court and also waived any right to reject the Arbitration Clause" because she filed for arbitration. (*Id.*) They also argue that "the parties entered a separate, binding contract requiring arbitration when Plaintiff filed in JAMS and Defendants appeared, agreed to the forum, and paid the required fees." (*Id.*)

7

In sum, Defendants contend that "there is no dispute as to the validity of the parties' agreement to arbitrate." (*Id.* at 21.) They maintain that a valid and enforceable written Arbitration Clause exists, interstate commerce is present, Plaintiff's claims fall within the scope of the Arbitration Clause, and she acknowledged that she understood and agreed to the Arbitration Clause. (*Id.*)

### B. Plaintiff's Position

In opposition, Plaintiff largely argues that this case should be remanded to state court because there exists no subject matter jurisdiction. (Opp'n Br. at 4–6.) She contends she "filed an amended complaint to correct the wording" because there was "never meant to be any federal claims in the original complaint."[2] (*Id.* at 2.) Plaintiff argues that she "is not a licensed attorney and should not be held to the same standards when preparing court documents and not allowed to correct mistakes when the evidence is clear that the matter is a fraud complaint." (*Id.*) She further argues "that the arbitrator cannot hear claims for fraud as stated by statute and the laws of the State of New Jersey." (*Id.* at 5.) She also argues that she would be prejudiced by the rules governing arbitration because they would deny her pertinent discovery. (*Id.*)

### C. Defendants' Reply

In their reply, Defendants note that Plaintiff offers no rebuttal concerning the enforceability of the Arbitration Clause. (*Id.*) They argue that Plaintiff's fraud claims fall squarely within the definition of a "Dispute" as defined under the Arbitration Clause and that arbitrators can and do hear fraud claims, including CFA claims. (*Id.* at 2–3.) In addition, they argue that Plaintiff's other claims are also the types of claims contemplated by the Arbitration Clause. (*Id.* at 3–4.)

---

[2] Contrary to Plaintiff's statements, she has not filed an amended complaint in this action.

8

Second, Defendants clarify that no amended complaint has been filed in this case. (*Id.* at 5.) They argue that even if there were, it would not provide a basis to remand this case or deny Defendants' motion to compel arbitration because, even if Plaintiff's federal claims were withdrawn, the Court would still have diversity jurisdiction. (*Id.* at 5–6.) Finally, Defendants add that Plaintiff will not be prejudiced by proceeding to arbitration and they emphasize the benefits of arbitration over court proceedings. (*Id.* at 8–9.)

### III.      LEGAL STANDARD

The FAA embodies the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Under the Act, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon*, 959 F.3d at 599 (citing 9 U.S.C. §§ 3, 4). However, despite the strong presumption of arbitrability, "[a]rbitration is strictly a matter of contract" and is, therefore, governed by state law. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."). Accordingly, when deciding whether to compel arbitration under the FAA, a court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citation omitted). In conducting this inquiry, the Court applies state law principles of contract formation. *Torres v. Rushmore Serv. Ctr., LLC*, Civ. No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018).

When determining whether a valid arbitration agreement exists between the parties, the Court must first decide whether to apply a Rule 12(b)(6) or Rule 56 standard. *Sanford v. Bracewell*

*& Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015).  The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard when it is apparent, based on the face of a complaint and the documents relied upon in the complaint, that the party's claims are subject to an enforceable arbitration clause.  *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted).  In other words, "where the affirmative defense of arbitrability of claims is apparent on the face of a complaint," the court "resolv[es] a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery . . . ."  *Id.* at 771.

Conversely, the Court applies the Rule 56 standard when the motion to compel arbitration does not involve a complaint "with the requisite clarity to establish . . . that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did."  *Id.* at 774 (citations omitted); *see Noonan v. Comcast Corp*, No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) ("[Thus,] a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record."). Accordingly, "the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists." *Ross v. CACH*, LLC, No. 14-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015); *Guidotti*, 716 F.3d at 774–76 ("Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record . . . . Under either of those scenarios, a 'restricted inquiry into factual issues' will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate.").

**IV.       ANALYSIS**

As a threshold issue, the Court has reviewed the record and confirms that Defendants timely removed this matter under 28 U.S.C. §1441. Moreover, based on the operative Complaint, and Plaintiff's assertions to the contrary notwithstanding, the Court does have subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), and 28 U.S.C. § 1367 (supplemental jurisdiction).

Turning to the instant Motion, as set forth above, the Court first determines whether to apply the Rule 12(b)(6) standard or the Rule 56 standard. To this end, the Court has reviewed the Complaint. It is not a model of clarity.

The Complaint makes several allegations, only a few of which relate to the propriety of the arbitration clause. Aside from bald accusations of fraud and deception, Plaintiff's substantive challenge to the arbitration clause appears to be only that she was not permitted to read any of the sales documents (including the arbitration provisions) prior to executing them due to the process the dealership employed for electronic signatures. At its clearest point, the Complaint alleges "[t]he electronic signatures deprived plaintiff of an opportunity to read the loan and agreement prior to signing it." (Compl. ¶ 1.)[3] This is at odds, however, with the very next paragraph of the Complaint that alleges Plaintiff was "presented an arbitration agreement, a separate part of the [C]ontract, for [her] to electronically and physically sign . . . ." (Compl. ¶ 2.) Moreover, as set forth above, as part of the transaction, Plaintiff physically signed a one-page E-Signature Declaration, confirming that she "was given the opportunity to review a paper version of the retail

---

[3] At another point, the Complaint alleges that "Plaintiff was denied an opportunity to read any of the loan contract, arbitration agreement or warranty, service and maintenance contracts prior to the corrections plaintiff was told could not be made by the dealership." (Compl. at un-numbered paragraph on page 2.) From the context of the surrounding language, it is apparent that the "corrections" Plaintiff sought were the reduction to certain fees and the removal of her sister's name from the loan application.

11

installment contract I was being asked to sign prior to using electronic signatures to electronically sign the documents."[4]  (ECF No. 9-5.)  In this instance, the Court finds that the arbitrability can be determined by the Complaint.  Plaintiff has not come forward with reliable evidence that she did not intend to be bound by the arbitration agreement.  *See Guidotti*, 716 F.3d at 774.  The Court will therefore review Defendants' motion to compel under a Rule 12(b)(6) standard.

Under the standard, the Court must determine (1) whether the parties have a valid arbitration agreement and (2) whether the dispute is covered by the arbitration clause.  *Flintkote*, 769 F.3d at 220; *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 141 (2019).  "One component of a valid arbitration agreement is that the parties agreed to arbitrate."  *Bacon*, 959 F.3d at 599–600.  To determine whether a valid arbitration agreement exists, the Court applies state-law principles of contract formation.[5]  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Under New Jersey law, "[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms."  *Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 308 (2016).

"Arbitration clauses are not singled out for more burdensome treatment than other waiver-of-rights clauses under [New Jersey] law."  *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 444 (2014).  "[W]hen a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver 'must be clearly and unmistakably established.'"  *Id.* (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 132 (2001).  Therefore, a "clause depriving a citizen of access to the courts should clearly state its purpose."  *Id.* (quoting *Marchak*

---

[4] Plaintiff does not attach the E-Signature Declaration to her Complaint, but the Court finds that as part of the documents embodying the agreement at it issue in this case, the E-Signature Declaration is nevertheless "integral to the Complaint" and therefore available for the Court's consideration at the motion to dismiss stage.  *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (applying the rationale of *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) in the context of a motion to compel arbitration).

[5] The parties do not dispute that New Jersey law governs the question of contract formation.

12

*v. Claridge Commons, Inc.*, 134 N.J. 275, 281 (1993). "Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer." *Id.* The language of the arbitration clause "must be clear and unambiguous—that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 445.

Here, the Arbitration Clause occupies the entire last page of the Contract, which only consists of five pages. (Valle Decl., Ex. C, Contract at 6.) The Contract contains two conspicuous notices concerning the existence of the Arbitration Clause. (*Id.* at 2, 6.) The first page of the Contract notifies the reader that it contains an arbitration clause and states, "[b]y initialing below, you confirm that you have read, understood and agreed to the terms and conditions in the Arbitration Clause." (*Id.* at 2.) The first page also warns the reader, in large font, that there are additional terms and conditions of the agreement to arbitrate. (*Id.*) The last page of the Contract is captioned "Agreement to Arbitrate," and it explains that arbitration is a method of resolving disputes without "having a trial in court in front of a judge and/or jury." (*Id.* at 6.) Thus, it explains that Plaintiff is waiving her right to seek relief in court and indicates how arbitration is different from a proceeding in a court of law. The Court finds that the Arbitration Clause is written in plain language that would be clear and understandable to the average consumer. The Court finds that there exists a valid arbitration agreement.

Next, the Court will address whether Plaintiff's dispute falls within the scope of the Arbitration Clause. *Flintkote*, 769 F.3d at 220. "In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability . . . .'" *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009) (quoting *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986)). This

presumption applies whenever a contract has an arbitration clause and is "particularly applicable where the clause is . . . broad." *AT&T Techs.*, 475 U.S. at 650.  When the presumption applies, "a court may not deny a motion to compel arbitration 'unless it may be said with positive assurance that the . . . arbitration clause is not susceptible of an interpretation that covers the dispute.'" *Cup v. Ampco Pittsburgh Corp.*, 903 F.3d 58, 64–65 (3d Cir. 2018) (quoting *AT&T Techs.*, 475 U.S. at 650).

Here, the Arbitration Clause defines a "Dispute" to broadly include "any controversy or claim" arising "out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, [and] advertising for the Vehicle or its financing . . . ." (Contract at 6.)  The Arbitration Clause states that the word "'Dispute' shall have the broadest meaning possible and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories."  (*Id.*)  The Complaint alleges fraud, as well as violations of RICO, ECOA, TILA CFA, UCC, and state lemon laws through their misrepresentations in connection with the financing of the Vehicle.  (Compl. ¶¶ 3, 8, 10, 28.)  These claims all stem from her contractual relationship with Credit Acceptance. Plaintiff's Complaint also includes allegations relating to the sales price imposed by the Dealer. These claims arise out of and are related to the amounts due under the Contract.  Accordingly, the Court finds that the dispute is covered by the Arbitration Clause because Plaintiff's claims fall within its definition of a "Dispute."

## V. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to compel arbitration and this case will be dismissed. An appropriate Order will follow.

Date: February 16, 2022

                                             s/ Zahid N. Quraishi
                                             **ZAHID N. QURAISHI**
                                             **UNITED STATES DISTRICT JUDGE**